DEN EX DEM. JOSEPH C. WILLS *vs.* WILLIAM MORRIS COOPER AND WIFE and SAMUEL EDWARDS.

1. Conveyance of land to B. B. C. and wife in trust, to receive rents and profits, &c., during the minority of their children, and apply the same to their maintenance, and, immediately after they come of age, then in trust to convey the land to all such of the children as may then be living, and to the lawful issue of such child or children as may then be deceased in equal shares, as tenants in common in fee, &c. B. B. C. survived his wife, and died, having first, among other things, devised all the residue, remainder, and reversion of his estate, &c., to his three children, Ralph, Sarah, and William, to be equally divided among them, &c., Ralph, being then of age, and Sarah and William minors. *Held,* that B. B. C. and wife took a trust estate under the *conveyance;* and B. B. C. surviving his wife, the legal title, subject to the trust, devolved on him.

2. A trust estate may pass under a *devise* such as this, unless there is something in the will or in the circumstances of the case from which a contrary intention is apparent. But in this case, two of the children being under age, the estate did not pass by the devise, because that would operate as an extinguishment of the trust.

3. As a consequence, the estate descended to Ralph, as the eldest son of the testator, according to the law of primogeniture; our statute of descents not applying to naked trust estates.

4. Trust estates are in all cases subject to merge in the legal estate whenever both estates come to the same person; for a man cannot be trustee for himself.

5. In this case, as to Ralph's one-third of the estate, the law executed the trust by casting the legal title on him by descent; and, as to that, his beneficial interest merged in his legal title.

6. As to the other two-thirds, he took the title, as trustee, of Sarah and William, the minors.

7. Ralph's one-third of the estate, after the descent cast, was liable to be sold in payment of his debts.

This was an action of ejectment, brought in this court by Joseph C. Wills against William Morris Cooper, Caroline H. J. his wife, and Samuel Edwards, to recover one undivided third part of a tract of land, in the county of Camden, containing twenty-one acres and seventy-two hundredths of an acre, being part of what is called the Indian orchard tract.

The case was tried before Justice Elmer, at the Cam-

den Circuit, October term, 1854, and a verdict taken for the plaintiff, subject to the opinion of this court.

The following state of the case was agreed upon by counsel :

Upon the trial of the issue in the above stated case before the Circuit Court of Camden county, the defendants confessed lease, entry, ouster, &c., according to stipulations and agreement in consent rule, &c.

The plaintiff, on his part, offered in evidence, and proved—

1st. A deed of bargain and sale from Joseph Fifield and wife to Joseph C. Wills (the lessor of plaintiff), bearing date the 10th day of February, 1854, properly acknowledged, recorded, &c., for the equal undivided one third part of a tract of land in Delaware township, in Camden county, called and known as the Indian orchard, containing thirty acres and twenty-two hundredths of an acre, which deed includes the premises in dispute for which defendants defend. (*Prout* said deed.)

2d. A deed of bargain and sale from Abraham Browning to Joseph Fifield, dated April 19, 1839, properly executed, &c., for the Indian orchard tract, containing thirty and twenty-two hundredths acres, &c., mentioned in above deed. (*Prout* said deed.)

3d. An exemplified copy of a judgment in Supreme Court of New Jersey, in favor of the Philadelphia Loan Company against Ralph V. M. Cooper, for thirty thousand dollars debt, and four dollars cost of suit, signed January 30th, 1838. (*Prout* the same.)

4th. An exemplified copy of the execution issued out of the Supreme Court on the above judgment, tested of the November term, 1837, and made returnable, and returned to the February term, 1838, with the inventory and levy upon the Indian orchard tract in question by the sheriff of Gloucester county, to whom the execution had been directed, annexed thereto. (*Prout* the same.)

5th. A sheriff's deed, from Joshua P. Browning, esq., sheriff of Gloucester county, to Abraham Browning, dated 6th day of October, 1838 ; among other lands, for the Indian orchard tract above mentioned. (*Prout* said deed).

6th. An exemplified copy of the last will and testament and codicils of Benjamin B. Cooper, deceased, and the probate to the same. Will dated December 16, 1834. (*Prout* the same).

Benjamin B. Cooper died in the month of March, 1835 ; his wife, Sarah Cooper, died several years before. His will was proved by the executors, Ralph V. M. Cooper, Samuel Nicholson, and Charles Gaskill.

They left three children, Ralph V. M. Cooper, Sarah Ann (now Sarah Ann Lee,) and William Morris Cooper. The first, Ralph V. M. Cooper, being of age at the time of the death of his father ; the second, above named, being of age at the time the judgment was signed against Ralph V. M. Cooper, above mentioned ; and the last one named, to wit, William Morris Cooper, being twenty-one years old in the month of December, 1844. The children are still living, and now of age.

Benjamin B. Cooper was in possession of the Indian orchard, including the premises in question, at the time of his death, and Ralph V. M. Cooper, after the death of his father, up to the time of sheriff's sale, and Dr. Joseph Fifield was in possession of same under his deed, after he purchased, up to 1848.

The defendants offered in evidence and proved—

1st. A deed from Joseph H. Van Mater and Elizabeth his wife to Benjamin B. Cooper and Sarah his wife, dated September 3, 1818, for Indian orchard, above mentioned. (*Prout* said deed).

2d. A deed from Ralph V. M. Cooper to William Morris Cooper, dated March 16, 1849, for the premises in question. (*Prout* said deed).

3d. A deed from William Morris Cooper and wife to

George T. Risden, for the same premises, dated the 6th day of December, 1849. (*Prout* said deed).

4th. A deed from George T. Risden to William Morris Cooper and wife, for the same premises, dated the 6th day of December, 1849. (*Prout* said deed).

Admitting the above deeds, documents, and facts as proved, the question is, whether judgment final shall be entered upon the *postea* in favor of plaintiff, (a verdict having been taken in favor of plaintiff, subject to the opinion of the court).

The case was submitted on briefs to the CHIEF JUSTICE and Justices OGDEN and POTTS, by *Dudley* and *Carpenter*, for the plaintiff, and *Browning*, for the defendants.

*Dudley*, for plaintiff.

The question in the case, and the only one, is, whether the sheriff's sale and deed conveyed Ralph's interest in the land, that is one third part of the tract, or, in other words, whether Ralph V. M. Cooper had an interest in this land that could be levied upon and sold.

This is the only question raised, or intended to be raised in this case. If he had an interest susceptible of sale, then the plaintiff is entitled to judgment; if not, then the defendant is entitled.

Ralph is the oldest child, and was past twenty-one years old when his father died. The three children are now all living, and all past twenty-one years of age.

The question depends upon the trust deed from Joseph K. Van Mater, dated September 3, 1818, to Benjamin B. Cooper and wife.

We hold that, at the time of the sheriff's sale, Ralph V. M. Cooper was seized absolutely in his own right in fee simple of the equal undivided one third part of this tract.

The land is conveyed to B. B. Cooper and Sarah his wife, in trust for their children.

The rents, issues, and profits to be expended by trustees for the maintenance and support of children during minority.

And from and immediately after the said children shall arrive at lawful age, then in trust to grant and convey and assure the same to children then living.   *   *   * And in case of death of all children under age and without issue, then, &c.

We think that it was the intention of the grantor in this deed that each child should have his interest conveyed to him when he became twenty-one years of age, and that the language and reading of this deed warrants this construction.

But if it is a matter of doubt in the deed whether the grantor meant that the children should have their respective shares conveyed as they each arrived at that age, or not until after they all became of age, then that interpretation shall be given the deed which is most favorable to the grantee.

Now it is more favorable to the grantee that it should be construed to vest absolutely as each arrived at twenty-one, than to be held until after all the children became of age.

The legal estate, it is admitted on all hands, was in Benjamin B. Cooper at the time of his death, and the equitable in the three children.

The legal estate, upon his death, either descended to his heirs, or else passed under his will.

And first, as to the descent.

It either descended to all three of the children, Ralph, Sarah Ann, and William M. Cooper, or else descended to the eldest male child, to wit, Ralph.

If it descended, we suppose it was according to the law of primogeniture.

Our statutes being confined to estates held in one's own right. *Revised Laws* 337.

*Devise.*—But we think it did not descend, but passed under the residuary clause of Benjamin B. Cooper's will to the three children.    [See extract from the will.]

Lands held in trust will pass under a will, unless it can be colleced from the language of the will that the intention was otherwise. 1 *Jarman on Wills* 638, (*Perk. ed*) ; 4 *Kent* 538 ; *Jackson*, v. *Delancy*, 13 *Johns, R.* 537.

This seems to have been the opinion of the chancellor in the case of *Cooper* v. *Cooper*, 1 *Halst. Ch. Rep.* page 9, in construing this identical will and the residuary clause in question.

But it is submitted, so far as this case is concerned, that it does not matter whether the legal estate passed by the will or by descent.

If it descended to all the children, the result is the same as if it was devised.

If, according to the law of primogeniture, the whole legal estate vested in Ralph, one third for himself and one third for each of other children.

In which case it would be his duty to convey to the other children.

Indeed the law would presume a conveyance whenever necessary to support title, whether in point of fact any had been made or not.    *Obert* v. *Bodine, Spenc.* 394.

Ralph thus, upon the death of his father, became seized of one third part of the legal, as well as one third part of the equitable estate.

*Merger.*—The legal and equitable, being vested in the same person, merged. 4 *Kent.* 102 ; 1 *Greenl. Cruise Digest* 384, *413, ; 2 *Crabb Real Property* § 2450, page 1059 ; *Hill on Trustees* 252, *last ed.*, (see cases cited) ; *Cooper* v. *Cooper*, 1 *Halst. Ch. Rep.* 9.

An estate may merge for one part of the land and continue in the remaining part.    4 *Kent* 100.

If the view above taken be correct, the whole question is determined.

II. But suppose we are mistaken as to the time when the trustee, by this deed, is to convey the property.

That he is not to convey as each one attains twenty-one, but when all shall arrive at that age.

What is the interest that these children then took in this land during minority? and—

1st. As to the interest while they were all minors, before either became of age; and—

2d. As to the interest of Ralph after he became of age, and while the other children were minors.

I. And as to the interest while they were all minors.

The law favors the vesting of all estates. Whenever an interest can be construed as vested, the courts will so construe it rather than as contingent. The leaning is always in favor of its vesting. In cases of doubt, construed to be vested rather than contingent. 4 *Kent* 203 and 204; *Right* v. *Creber*, 5 *Barn. & Cres.* 872; 8 *Bac. Ab.* (*Bouvier ed.*) 315, *title Remainder, letter C.*; *Olney* v. *Hull*, 21 *Pick.* 311; *Bowers* v. *Porter*, 4 *Pick.* 198; 2 *Fearne on Remainders* § 200, *p.* 73.

The same rules, as to estates vesting, apply to trust estates that apply to remainders. *Edwards* v. *Symons*, 6 *Taunton R.* 213. Ralph took a vested interest during his minority.

The land was to be held by trustees during minority of children, and to be conveyed immediately after (not *if*) they arrive at lawful age.

There is no subsequent estate. The whole interest conveyed by this deed is for the children. There is no life estate to one, and a remainder to another, but the whole beneficial interest is for the children. It is not a remainder; it is a stronger case than that of a remainder.

If a bequest be made to children when they shall attain twenty-one, and testator appoints a person to be a trustee during the intermediate time, it is a sufficient indication of its immediate vesting. 2 *Fearne on Rem.* § 346, *p.* 171.

The deed in question fixes the persons to whom the interest is to go. All the rents, issues, and profits are to be expended immediately for their support and maintenance, and the fee simple at twenty-one.

If it is replied, that the conveyance is for the benefit of the afterborn, as well as those in being at the time, it will not prevent the estate or interest vesting.

The vested interest will open, and let in the afterborn. 4 *Kent* 205.

Liable to be defeated by dying during minority without issue, will not prevent its vesting.

An estate for life to A, with power to appoint, and if no one appointed then to B, is a vested interest in B, although liable to be defeated by the appointment. 4 *Kent* 204; 2 *Fearne on Rem.* 193.

A testator devised to I. M., when he attained twenty-one, to hold to him, his heirs and assigns, but in case he should die before he attained twenty-one, then to his brother, &c., held that I. M. took an immediate vested interest, subject to be defeated or divested upon his dying under twenty-one. *Doe d. Hunt* v. *Moore*, 14 *East* 601; *Doe d. Hunt* v. *Newell*, 1 *Maul. & Sel.* 327; *Doe* v. *Roake*, 5 *Dow.* 202; 2 *Fearne on Rem.* 188; *Phipps* v. *Williams*, 5 *Sim.* 44; *Walter* v. *Walter*, 2 *Bro. & Bing.* 349.

2. The rents, issues, and profits, during minority, to be applied for the maintenance and support of the said children.

Where a present interest is granted, the courts construe interest vested.

And 1st, as to personal property.—Where a legacy of £50 is bequeathed when of the age of sixteen years, and a direction that interest be paid quarterly, it is held that legacy vests immediately, because interest to be paid. 6 *Bac. Ab.*, *Legacies E*, (*Bro. ed.*) 245.

Where till the period when possession is to be taken, the whole annual produce of the fund is to be employed

for the maintenance, or for the benefit, or upon trust for the legatee, the fund vests at once in legatee. 6 *Bac. Ab.* 265 (*B. ed.*), *title Legacy, letter E; Fonereau* v. *Fonereau,* 3 *Atk.* 645; 2 *Fearne on Rem.* 157.

As to real property—

The same rule applies that does to personal. *Edwards* v. *Symons,* 6 *Taunt.* 213; *Goodtitle* v. *Whitby,* 1 *Burr.* 228; 4 *Kent* 205; *Trodd* v. *Downes,* 2 *Atk.* 304.

The fact of deed directing the estate to go over if children die under age and without issue, a reason to show it vested. 4 *Kent* 206.

Submitted upon the plain language of the deed, there being a fixed person and fixed time for the interest to take effect; the rents, issues, and profits being applied for maintenance and support, and the whole interest conveyed to the children; that Ralph had a vested interest during his minority.

A vested interest may be sold on execution. *Den* v. *Hillman,* 2 *Halst.* 180.

But whatever may be the construction as to this land vesting during the minority of Ralph, as soon as he became of age he had a vested interest, that could not be defeated.

Where a contingent remainder is limited to the use of several, who do not all become capable at the same time, notwithstanding they do not all become capable, it will vest in the person who thus becomes capable, and in the others as they become capable, and they may take jointly, notwithstanding the different times of vesting. 1 *Fearne on Rem,* 310 and 312.

Same rule applies where estate is to several persons in common. 1 *Fearne on Rem.* 310, *note c.*

Having attained twenty-one years previous to the death of his father and the sale by the sheriff, it was a certain fixed and vested interest, the legal estate was in him as

well as the equitable; they merged and passed by the sheriff's deed.

*Browning*, for defendants.

The question presented is, whether Ralph V. M. Cooper, at the time of the levy and sale by the sheriff, in 1838, had such an estate in Indian orchard as could be taken and sold under a common law execution against him?

I. It is obvious that upon the decease of Sarah Cooper, the trust survived to her husband, B. B. Cooper, and that in his hands it was a naked trust " for the maintenance and support" of their three children during their minority; and, upon their arriving at age, to convey to them and their issue, if any should then be dead leaving issue.

II. As B. B. Cooper died in the minority of two of his children, the trust estate descended to his heir at law, or else it passed by the residuary clause of his will.

1. If it descended to the heir at law, that heir was the oldest son, R. V. M. Cooper. This seems to be admitted by plaintiff's counsel.

Our statute of descents does not apply to naked trusts, but to beneficial estates, to estates held by intestate "in his or her own right in fee simple." *El. Dig.* 129 ; *R. S.* 337.

The object of the statute was to distribute beneficial property equally among all the children, not to divide mere trusts amongst numerous members of the same family or collateral relatives, which would lead to very serious inconvenience in the execution of trusts, and is without the intent of the law. It was so held in Pennsylvania, under their statute of descent, which is broader than ours. *Jenks* v. *Backhouse*, 1 *Bin.* 91; *Baird's appeal*, 3 *W. & S.* 459; *Rigler* v. *Cloud*, 2 *Harris* 361.

The only intimation which I have found against this construction of our act was by Ch. Halsted, who, upon a somewhat similar trust deed, said if the trust estate de-

scended, it vested in the three children. *Cooper* v. *Cooper*, ¹ *Hulst. Ch.* 13.

But this was not the point in that case, and does not appear to have been argued by either counsel. It seems to have been a first blush impression of the chancellor, without consideration, and, I submit, is without principle or authority. He cites no case.

2. But it is contended that this trust estate passed, by the residuary clause of the will, to all three of the children. The authorities relied on (1 *Jar.* 638, 4 *Kent* 538, 13 *Johns.* 537), will not sustain the proposition.

Jarman says, that after much fluctuation of authority, the rule is established that trust "property will pass under a general devise, unless a contrary intention can be collected from the testator's expressions, or from the purposes or limitations to which he has devoted the subject of disposition." He relies on the case of *Braybroke* v. *Inskip*, 8 *Ves.* 417, but states the rule rather broader than that case will justify. The rule as stated in the syllabus to that case, is, "that trust property will pass by a general devise, unless a contrary intention can be collected from expressions in the will, or purposes or objects of the testator." And this case is a departure from the rule laid down by his lordship, in *Ex parte Brettell*, 6 *Ves.* 577, which he now explains by saying, that all he then meant was, "that there was sufficient upon the face of the will to show that only what was beneficially his should pass." 8 *Ves.* 437.

Assuming these cases, thus explained, to harmonize and to contain the correct rule (which is quite doubtful), still it abundantly appears, upon the face of B. B. Cooper's will, that he did not intend to embrace this naked trust in the residuary clause ; that it was neither his purpose nor object to pass it. The "purposes and objects" of this residuary clause were obviously to pass "only what was beneficially his." The testator directs the property devised

by it, " to be equally divided between his three children, and to be held to them and their several and respective heirs for ever;" not to be held jointly in trust for their maintenance until they should come of age, and then to be conveyed to the survivors and issue of any one that might be dead. He obviously had in his mind, and consequently made disposition of " only what was beneficially his."

Most of the cases, ancient and modern, will be found referred to in the text of or note to the case of *Braybroke* v. *Inskip*, 8 *Ves.* 437, *Sumner's ed.*

But it is submitted that the ancient rule, that a naked trust will not pass by a general residuary devise, unless it appear affirmatively that testator so intended, is the better rule; least likely to lead to inconvenience in the execution of trusts, and most likely to effect the real intention of the testator. Most men make their wills to dispose of their beneficial property only. Their minds are particularly directed to the distribution of that among the objects of their bounty. What the mind rests upon it intends to dispose of, and nothing else. It is absurd to say that a man intends to devise what he does not think of. When testators really intend to pass naked trusts, that is, to create or appoint new trustees in their stead, they do so expressly. In the case before referred to, (*Cooper* v. *Cooper*, 1 *Halst. Ch.* 12,) Chancellor Halsted, it is true, rather intimated a preference to the modern rule, but he forbore to express directly his opinion. He was speaking, too, of this will; but the case exhibits but little research, and cannot be taken as of much authority. It did not turn on this point. It was an injunction case. R. V. M. Cooper claimed the right to cut timber on the " Abbott tract," as one of the executors of his father's will. The chancellor properly held that the will gave him no such power, for it expressly excepted the " Abbott tract;" and that he could have no such power independ-

ently of the will, for all his beneficial interest in this tract, whatever it might be, passed to his assignee in bankruptcy, he having previously taken the benefit of the bankrupt law.

III. If the legal estate, the naked trust, which existed in R. B. Cooper at his death, descended to his eldest son (and I insist it clearly did), the important inquiry is, whether until his brother, William Morris, came of age, he, Ralph, had such an estate in the undivided one third of Indian orchard as could be taken and sold in execution? It is confidently submitted that he had not.

A naked trust cannot be taken in execution, nor can a purely equitable estate. This is not denied. But it is insisted, that although the legal estate in the whole may have descended to R. V. M. Cooper, yet as he did thereby become trustee for himself in the undivided one third, there was a merger *pro tanto*, that is, his estate in one third became absolute by the union of the legal and equitable estates in the same persons, and the trust continued only as to the remaining two thirds. It is submitted that this is not a sound application of the doctrine of merger.

1. It is true that when the legal and equitable estates unite in the same person, the latter merges in the former. But a merger of an equitable and legal estate will never take place, except "where the trustee has the same interest in both estates:" "the two estates must be coextensive and commensurate, or (more accurately) the legal estate must be equally extensive with, or more extensive than the equitable estate." 3 *Ves.* 126 ; *Hill on Trustees* 252 ( *Wharton's ed.*)

By the same interest in both estates, is meant that the trustee's interest must be absolute in both estates ; or, in other words, before the legal estate will absorb, or annihilate the equitable, the trustee must have an absolute right to the equitable estate. He must hold the legal estate to and for his own use, without contingency and

without any other person being interested in it. An estate will never merge to the injury of another, whether that other has a vested or contingent interest. Here R. V. M. Cooper's issue had a contingent interest in the equitable estate, to vest if he should die before William Morris should come of age. This would be defeated by a merger in him. And if he should die without issue, the surviving brother and sister would be defeated in their contingent interest in that one third by a merger.

Neither are the legal and equitable estates in R. V. M. Cooper "coextensive" nor "commensurate." His legal estate embraces the whole, the equitable only one third, and that limited by a contingency. It is true the legal estate, in one sense, is as extensive, or more extensive than the equitable, but not in the sense mentioned in Hill. The true meaning is that the legal estate must be of as high a grade as the equitable. A legal estate for life or oears cannot absorb an equitable estate in fee.

2. But again, an equitable estate will never merge in a legal one, when the merger would defeat the object of the donor. The legal estate was conveyed in trust for the maintenance of all, until the youngest should come of age. The object of the donor was maintenance of all these children for a limited period of time—of Ralph and Sarah Ann, after coming of age, as much as of William Morris until he should come of age. The whole trust was to continue up to that time, and then the living objects of the donor's bounty were to take absolutely.

III. Mergers in equity, or of equitable estates, are never favored, and are never allowed against the express or im plied intention of the parties A dissent would be pre sumed if a merger would effect any injury to them.

It was obviously the interest of R. V. M. Cooper, that his legal and equitable estate in the one third should not merge. Without the merger, his maintenance was se cured and his interest protected from execution, and his

contingent interests in the estates of his brother and sister, if they should die without issue, would be protected. But the brother and sister were interested in keeping the trust alive to the extent of the whole estate, for if the one third merged in Ralph, their contingent interest in that one third would be thereby destroyed. A dissent of these parties must be presumed.

I refer to the following cases for the principles here contended for. *James* v. *Morey*, 2 *Cow.* 246; *Donalds* v. *Plumb*, 8 *Conn.* 453; *Mechanics Bank* v. *Edwards*, 1 *Barb. S. C.* 272; *Gardner* v. *Astor*, 3 *J. Ch. R.* 53; *Starr* v. *Ellis*, 6 *Ib.* 393; *Den* v. *Vanness*, 5 *Halst.* 102; *Lewis* v. *Starke*, 10 *S. & M.* 128; *Elliott* v. *Armstrong*, 2 *Blackf.* 208.

When a merger once takes place the equitable estate is drowned, annihilated, gone for ever, and cannot be revived, (2 *Cow.* 246); and a court of equity will always prevent a merger to preserve any beneficial interest of the party to promote the purposes of justice, or to effect the intent of the donor. *Donalds* v. *Plumb*, 8 *Conn.* 453–4, and cases cited.

Now to hold that a merger in one third took place in R. V. M. Cooper might, partially, at least, frustrate the purposes of the trust defeat the intent of the donor. If a merger took place, his interest in one third became absolute, the equitable estate gone for ever. But the deed requires trustee, immediately after the children of B. B. Cooper and wife come of age, " to convey to all such of said children as may then be living, and to the lawful issue of any such child or children as may then be deceased, in equal shares, as tenants in common in fee." Had R. V. M. Cooper died without issue before his younger brother came of age, the whole equitable interest would have belonged to the surviving brother and sister, and should have been conveyed to them. But this could not be done if the one third had merged. As to that one third, the estate would have become absolute, and passed by the sale

under the execution. The intent of donor, *pro tanto*, frustrated. In like manner, if R. V. M. Cooper had died leaving issue they would be wholly cut off, or else share the remaining two thirds with their uncle and aunt. It is upon this principle, of never allowing a merger of an equitable and legal estate when it might defeat the intent of the donor, that an equitable estate in tail will never mere in a legal estate in fee. *Merest* v. *James*, 6 *Madd.* 118.

IV. The same difficulty would happen if we suppose that the legal estate either descended or was devised to the three children, instead of descending to Ralph alone. No merger could then be allowed until the youngest should come of age. The nature of the trust, the contingent interests or cross-remainders, in case of death of either before the time limited for the trust to cease, requires the legal and equitable estates to remain separate until that time. If merger be allowed, then the estate in each, would become absolute, and liable to be sold or taken in execution; and then, in case of death, either with or without issue, the one third thus sold or taken would be lost to the survivors. The trust, thus far, defeated.

V. The whole argument of merger, by plaintiff's counsel, is based upon the idea that the estate in each child became absolute upon him on her arriving at age. This idea, in my view, is opposed to both the letter and spirit of the trust. The trustee is to receive the rents, issues, and profits during their minority, not the minority of each, and apply said rents, &c., to and for the maintenance of all, and immediately after said children shall come of age; not as each shall come of age, to convey to all such as may then be living; not to each as he or she shall come of age, but to all at that specified time, obviously contemplating a trust as to the whole, until all of age, and then a conveyance to all, or the survivors. Could Ralph V. M. Cooper, upon coming of age in the lifetime of his father, have compelled his father to convey to him the

undivided one third? The plain answer to such a demand would have been, I am trustee for the maintenance of all my children until they are all of age, and I am then to convey to such as may then be living; and to the issue of any who may then be dead leaving issue: if I convey to you now I may be wholly unable to execute the trust at that time; you must wait. If B. B. Cooper could not have been compelled by his oldest son to convey one third to him on his coming of age, then no other person to whom that trust may have descended or being devised could be compelled, and the whole basis of the argument of plaintiff's counsel about merger is gone.

VI. I am unable to perceive that the argument of plaintiff's counsel upon contingent and vested remainders has any applicability to this case. In B. B. Cooper's lifetime, the legal estate was vested in him, and the equitable estate was vested in his children: he held in trust for them. Upon his death, the legal estate descended to his heir or passed to his devisee. The equitable estate remained where it was, in his children. The estates, both legal and equitable, before and after his death was vested. I see nothing like contingent remainders, except the cross-remainders over of the equitable estate to the survivors in case of death without issue.

It seems to me that the simple question is, whether these separate estates, so vested in whole or in part in R. V. M. Cooper, as to create a merger of the one in the other. If not, the sheriff's deed was void, and it is respectfully submitted that it was and is void. Consequently judgment should be entered for defendants.

*Carpenter*, in reply.

I. The legal title to the tract in question passed under this devise to the three children in fee, subject to the trust, or it descended to them all under our statute of descents; or if, as an estate subject to such trust, it did not pass by the

devise, nor come within our statute of descents, then it must have descended to Ralph V. M. Cooper, the eldest son, as heir at common law. In either case the result in the decision of this cause will be the same.

If not within the devise, I suppose the legal title descended to the heir at common law. Though of no actual importance, yet, as I take it, the legal title clearly passed under the words of the residuary clause.

Lands held by trustee pass by general words, unless it can be collected from the language of the will, or the purposes and objects of the testator, that the intention was otherwise. 1 *Jarman on Wills* 638 (2d *Am. ed.* 646); 4 *Kent* 538; *Jackson* v. *De Lancy*, 13 *Johns.* 537.

The rule is now too well settled to admit of question. I think the language used in the case of *Braybroke* v. *Inskip*, (8 *Ves.* 437, cited on the other side), fully warrants the statement of the rule in all the subsequent text books. It is then here a mere question of construction whether anything appears to show a contrary intention. The language of the clause is broad enough to include this trust estate, and no intention appears to the contrary.

The will shows an intention on the part of the testator to dispose of all his estate, not to die intestate of any. The will sets out with a declaration of his intention to " dispose of all his temporal concerns." It is very probable that the testator actually intended to unite by this devise the beneficial interest and the legal estate, so that a future conveyance might be unnecessary.

Chancellor Kent thought the rule, that trust estates should pass by general words in a devise most convenient. See remarks in *Jackson* v. *De Lancy*, 13 *Johns.* 554, 555.

II. If the legal estate passed by devise, one third became vested in R. V. M. Cooper, subject to the trust. If by descent, then the legal title to the whole passed to him, as the eldest son, subject to the trust. In either case, if the beneficial interest of R. V. M. Cooper, in the premises was a vested interest, it merged in the legal estate.

No man can be trustee for himself. Lord Mansfield, in *Goodright* v. *Wells*, *Doug.* 771, (778); cited at large in *Prest. on Merger* 330 (42 *Law Lib.*)

Merger is the act of the law by which two estates (*e. g.* legal and equitable) meeting in the same person unite; the collateral is extinguished or merged in the legal. *Prest. on Merger* 6 (*Law Lib.*); *Ib.* 315, 441, 446.

It may be absolute or conditional only. As against one person, the collateral estate may be merged, whilst as against another, it may have continuance in point of title. "This may happen as long as any third person may have a continuing interest under the lessor or collateral estate." *Prest. on Merger* 39; 6 *Greenl. Cruise, tit. Merger,* § 6, (468); also § 25, 26, 30, (*472).

Thus here the merger became complete, and the estate absolute in R. V. M. Cooper, upon his attaining twenty-one; but he took subject to the trust, so far as respected his brother and sister. The merger, as to one third in R. V. M. Cooper, in no way affected the trust in favor of the others. It was no injury, therefore, to them.

Again, merger may have a partial operation. It may operate upon an undivided portion of the estate, as upon one-third, precisely as in case of holding the entire interest in the premises. *Prest. on Merger* *88, 89; 4 *Kent* 100; 6 *Greenl. Cruise, title* XXXIX, § 7, (*468).

To this point, "when there is devise to trustees, one of whom is to take a beneficial interest in trust property, he takes a legal estate to the extent of such interest." *Mason* v. *Mason's Ex'rs*, 2 *Sand. Ch. Rep.* 433; 8 *U. S. Digest* 357.

There was no injury, in fact or in contemplation of law, to prevent in this case the merger, as must be evident from the application of these principles to the facts of this case. It is said, in the argument on the opposite side, that to create merger "the trustee must have the same interest in both estates;" the two estates must be "coextensive and commensurate." *Hill on Trustees* 252 (*Wharton's ed* 1854).

The principle is not fully stated or the book fairly cited. The author adds, "or, more accurately, the legal estate must be equally extensive with, or more extensive than the equitable estate. For the equitable fee will not merge in a partial or particular legal interest."

The true principle is simply this, "the legal estate must be equal to, or more extensive than the equitable estate." *Hill on Trustees* *252.

Here a vested beneficial interest in Ralph merges in his legal estate in the one case, if his legal estate as devisee is one third, the estates being exactly coextensive; in the other case, if he takes the whole legal estate as heir, the legal estate is more extensive than the equitable interest. In either case the rule is complied with.

It is not true that the rule means that the interest of the trustee must be absolute in both estates, in the sense in which the phrase is used on the other side. It is sufficient if it is absolute (that is vested) as respects the trustee, but subject to a trust as respects others. Merger may be absolute as respects the trustee, whilst as against a third person it may be conditional only, as already shown.

If, therefore, it was the intention of the donor, in all events, to provide for the maintenance of all the children, until all became twenty-one, (a construction I am not ready to admit), yet, as the merger of the beneficial interest of Ralph was still subject to this charge, no injury could accrue to the rights of others, nor the supposed object of the donor defeated. But the doctrine of merger does not depend upon intention. *Prest. on Merger* *43.

Neither, in a legal sense, can it be said to be the interest of Ralph that his interest should be tied up until all became twenty-one. It was his interest that it should be disposable at the earliest moment. An absolute estate, disposable at the will of the donee, is the highest interest which a man can have in land, and it is not permitted to look into the facts of this case, and make a special rule

to fit it    We are not, on this argument, to know that Ralph V. M. Cooper was a dishonest spendthrift, shortly to be sold ovt by the sheriff, and to say that it was his interest to tie up his property by trusts, so that it should not be reached by his creditors by executions against him.

Upon the view taken, it will be seen that it is entirely immaterial whether Ralph took by descent or devise. In either case there was a merger, if he stood in the position of trustee and *cestui que trust.*

III. The interest of Ralph under the trust was a vested beneficial interest ; it became vested, at least, as soon as he became twenty-one, and I suppose not until he became twenty-one.

The trust declared is for the benefit of the children, and from and immediately after the said children should arrive at lawful age, then in trust, to convey to all such of said children, &c.; and in case of the decease of all of the said children, &c., under age and without lawful issue, then over.

The distinction is to be recollected between—

1. Limitations at common law.

2. Limitations of uses which may be executed by the statute.

3. Of trusts which remain mere equitable estates. In regard to limitations of trusts, equity follows the law, and trusts vest, descend to heirs at law, and the limitations over are construed by, and depend upon the same principles as are applicable to legal estates. 4 *Kent* 302–4 ; *Lewis on Perpetuities* 511 (*Law Lib.*)

Remainders, vested and contingent, shifting uses and executory devises, all have their corresponding trusts. The doctrine and authorities in regard to vested and contingent remainders have been cited in order to show that, upon analogous principles, the equitable interest of Ralph was not only a beneficial, but a vested interest ; that after he arrived at twenty-one, there was no contingency which

could affect it; that if he died after it vested, it would descend to his children or other heirs at law, and that when the legal estate came to him by descent or devise, in either case, as a man could not be trustee for himself, the beneficial interest as *cestui que trust* merged in the legal estate.

The limitation over was good in this case under the common law rule against perpetuities, because one or the other contingency must take place, and the equitable estate vest accordingly within a life or lives in being, &c.

As to vesting, I add but this: that a remainder may vest as the respective parties entitled successively become of age. 1 *Fearne, ch.* 4, § 3, 310, 312, (*Lond. ed.* 1844).

There are two matters to be looked at in the construction of this trust: 1st, when and how the equitable and beneficial estates vest, and become certain not afterwards to be subject to any contingency; 2d, when these estates are to become legal by conveyance and the *cestui que trusts* entitled to possession.

The limitation over shows when the donor intended the equitable estate to vest, which when vested would descend, &c., at common law. The direction to convey shows when that estate was become absolute, in the sense of being turned by conveyance into a legal estate. This statement shows the whole argument of the plaintiffs does not turn upon the idea of the estate of each child becoming absolute upon him or her arriving at age, and discharged of any trust. The argument is, that the vested beneficial interest of Ralph under the trust merged in the legal estate which devolved upon him upon the death of his father. If the equitable estate of Ralph was a vested beneficial interest, how can it be otherwise than merged to the extent of his interest, unless a man can be a trustee for himself?

I submit that the equitable interest of Ralph under the trust was a vested beneficial interest; that it merged in

the legal estate in him to the extent of his interest, possibly subject to some charge until all became twenty-one, and that his interest passed by the sheriff's deed.

POTTS, J. This action is brought to recover possession of one equal undivided third part of a tract of land called Indian orchard, containing about thirty acres.

This tract was conveyed, in 1818, by Joseph Van Mater and wife to Benjamin B. Cooper and wife, in trust, "that they, the said Benjamin B. Cooper and Sarah his wife, or the survivor of them, and in case of the decease of both of them, the heirs, executors, or administrators of the said Benjamin B. Cooper, shall and do receive the rents, issues, and profits of the said lot of land during the minority of their children, Ralph V. M. Cooper and Sarah Ann Cooper, and such other child or children of them, the said Benjamin B. Cooper and Sarah his wife, who may hereafter be born, and pay and apply the said rents, issues, and profits for the maintenance and support of the said children now born, or hereafter to be born of them, the said Benjamin B. Cooper and Sarah his wife, and from and immediately after the said children shall arrive at lawful age, then in trust to grant and convey and assure the same to all such of the said children as may then be living, and to the lawful issue of any such child or children as may then be deceased, in equal shares as tenants in common in fee. Such issue to take and receive only such part or share thereof as his, her, or their parent would have done had he, she, or they been living," &c.

Benjamin B. Cooper and wife had one child born after the date of the above deed, to wit, William Morris Cooper. His three children, Ralph, Sarah, and William, all survived their parents, and are still living. Ralph was of age at the death of their father; William came of age in 1844.

Benjamin B. Cooper survived his wife, and died in 1835, having first made his will, by which he devised and be-

queathed to his three children, Ralph, Sarah, and William, all the residue, remainder, and reversion of his estate, real, personal, and mixed, or in company with others, wheresoever situated, to be equally divided between them, and to hold to them and their several and respective heirs and assigns for ever.

The contest here is about the title to Ralph V. M. Cooper's one equal undivided third part of this Indian orchard tract.

The plaintiff produced in evidence—

1. A judgment against R. V. M. Cooper in the Supreme Court, in 1838, an execution issued thereupon, and a sheriff's deed for the said tract, sold under said execution to Abraham Browning, dated October 6, 1838.

2. A deed for the same, from Browning to Joseph Fifield, dated April 19, 1839.

3. A deed from Fifield and wife to Joseph C. Wills, the lessor of the plaintiff, dated February 10, 1854.

And it appeared that B. B. Cooper was in possession of the premises up to the time of his death; Ralph V. M. Cooper from his father's death until the sheriff's sale in 1838; and Joseph Fifield, under his deed, from the time of his purchase up to 1848.

The defendants produced—

1. The deed of Van Mater and wife, above mentioned.

2. A deed from Ralph V. M. Cooper to William Morris Cooper for the premises in question, in 1849.

3. A deed from William Morris Cooper and wife to George T. Risdon, dated December 6, 1849.

4. A deed from Risdon to William M. Cooper and wife for the same, of same date.

The question in the cause is, had Ralph V. M. Cooper, at the time of the levy and sale by the sheriff in 1838, such an estate in one undivided third part of this Indian orchard tract as could be taken and sold under a common law execution?

If he had, the plaintiff is entitled to recover; if he had not, judgment must be for the defendants.

Benjamin B. Cooper and wife took, under the Van Mater deed, a trust estate in the premises. Surviving his wife, the legal title, subject to the trust, devolved on him. It was a naked trust; the whole beneficial interest was in the three children.

Upon his decease, the legal title passed either to the three children, under the residuary devise in the will, or it descended to Ralph, as the eldest son, according to the law of primogeniture, our statute of descents not applying to naked trust estates. *Rev. St.* 337.

1. Did it pass by the residuary clause in the will?

There is no doubt that a trust estate may pass under a devise such as this, unless there is something in the will or in the circumstances of the case from which a contrary intention is apparent. 4 *Kent's Com.* 538; *Jackson* v. *De Lancy,* 13 *Johns. R.* 537; *Braybroke* v. *Inskip,* 8 *Vesey* 417; *Roe ex dem. Reade* v. *Reade,* 8 *Term. Rep.* 118; *Winn* v. *Littleton,* 1 *Vernon* 3; *Marlow* v. *Smith,* 2 *P. Williams* 198.

Now it is true that the will declares it to be the intention of the testator to dispose of all his temporal concerns. The devise is of all the residue of the testator's estate, wheresoever situated, and no other disposition is made of this trust property. But the consequence of such a construction utterly annuals the trust, for the devise is to the three children, who are the *cestui que trusts,* to be equally divided between them; and as under it each would take the legal title in one third of the land, the beneficial interest of each would merge in the legal title; for there can be no doubt of the general principle, that trust estates are in all cases subject to merge in the legal estate whenever both estates come to the same person. A man cannot be trustee for himself. 1 *Cruise, tit.* 12, *ch.* 2, § 35, *p.* 494; *Preston on Merger* 42, *Law Lib.* 6; *Goodright* v. *Wells, Douglass* 778; *Hill on Trustees* 252 (*Wh. ed.*); *Lewin on Trustees,* 24 *Law Lib.* 16.

The trust under the Van Mater deed was to continue until the children arrived at twenty-one, that is all the children, as I understand it. Ralph was twenty-one when the devise took effect, but the other two, Sarah and William, were minors. Benjamin B. Cooper could not, by deed to the three children while under age, have conveyed to them the legal title, and thus have divested himself of an unexecuted trust. If he could, any trustee might at any time rid himself of the responsibility of an unexecuted trust by a conveyance to his *cestui que trust.* Then, if he could not have done so by deed, will the law allow him to do so by will, the effect and consequence being to extinguish the trust entirely? I think not. The legal presumption is, therefore, against such an intention.

2. Then, as the legal title did not pass by the devise, it descended to Ralph V. M. Cooper, as heir at law of his father.

He had then, in 1838, the legal title to the whole tract, and the question is, did the equitable estate in the one third of the land, which he took under the Van Mater deed, merge in the legal title?

When we come to apply legal rules to particular cases, the difficulty of the application grows almost invariably out of the fact, that scarcely any two cases are exactly alike, and it is the peculiarity of the case that creates the doubt.

The case before us has its own peculiarities, and such as, it is insisted by the defendant's counsel, prevented the merger. He contends—

*First.* That the beneficial interest was for the maintenance and support all the children until they should arrive at twenty-one; that it was a joint interest, incapable of division until the youngest came of age.

*Second.* That the absolute legal title could not pass to either of them until the youngest reached maturity, and that until then the trust could not be fully executed.

*Third.* That to both estates there was a condition annexed, that in case either died during the minority of any of the others, that share went, by the terms of the trust deed, to the children of the deceased, or, in default of issue, to the survivors.

And it is argued, that though upon the death of his father the naked trust, the technical legal title, descended to Ralph, yet that he had not the absolute interest in either the legal or the equitable estates; that both depended upon contingencies; that they they were not coextensive nor commensurate; that the merger would defeat the intention of the donor, which was that the whole estate should remain for the purposes of the trust until the youngest child was of age, and would be prejudicial to the interests of Ralph, as it might operate to deprive him of the support he derived from it.

But it is to be observed, as to the interest the *cestui que trusts* took under the Van Mater deed—

1. That it was present interest, vesting, upon the delivery of the deed, beneficially in Ralph and Sarah, and opening afterwards to let in William, who was subsequently born. 4 *Kent's Com.* 205.

2. That the interest of each of the children was equal; they were placed on terms of perfect equality, the rents and profits were for their support until all came of age; and after William's birth, each child became in fact beneficially interested in one third of the profits, and was to continue so until the trust was finally executed.

3. That though the legal title was not to be conveyed by the trustees to the *cestui que trusts*, by the terms of the trust, until the youngest child became of age, yet that as to one third, Ralph's part of the estate, the law executed the trust by casting the legal title on him by descent. This must be so, for he could not remain trustee for himself nor make a conveyance to himself.

4. That as to the clause making provision for the case

of the decease of any one of the *cestui que trusts*, it amounts simply to this, that in that contingency the estate went to the children or heirs of the person dying precisely as it would have gone had the clause not been in the deed.

The intention of the donor is, I think, fairly carried out if each of the *cestui que trusts* remain secure in the enjoyment of one third of the rents and profits, for this is in effect precisely what is granted. And the merger of Ralph's beneficial interest in his legal estate did not affect the beneficial interest in either of the other thirds. And as to Ralph, a merger in 1835 was clearly for his interest, for it made him the absolute owner of his one third of the land some eight or nine years earlier than he would have been had the estate not been cast on him.

It may be true that if Ralph had died leaving no issue, before William Morris came of age, that his one third would have gone under the Van Mater deed to the survivors, Sarah and William. But that condition in the deed could not prevent the merger; though the estate, after merger, in whosesoever hands it was, might thereby have been defeated.

Now as to the legal title, it having passed to Ralph by descent, the trust, as to his one third part, was an executed trust, and as to the other two thirds, he held the title as trustee for his brother and sister. This seems to be the inevitable result, as he could not remain a trustee for himself.

Then what became of his equitable estate?

It was a vested beneficial interest, for he had the present enjoyment, as well as the legal title, to him and his heirs, under the Van Mater deed. Ordinarily, when such an interest or estate meets and unites with the legal title in one person, the former merges in the latter. *Preston on Merger* 6, 315, 441.

And even though the other *cestui que trusts* had a continuing interest in the whole tract, this, it seems, would

not prevent a merger, for as against one person, the estate may be merged, while as against another, it may have a continuance in point of title, which happens as often as some third person has a continuing interest under the lesser estate. *Preston on Merger* 39.

So it may have a partial operation. It may operate upon an undivided portion of the estate. *Preston on Merger* 88, 89 ; 4 *Kent's Com.* 100.

The rule as stated in *Hill on Trustees* 252, is, that "where the legal and equitable estates become vested in the same person, the latter will be absorbed, and merge in the former ;" " for this purpose, however, the two estates must be coextensive and commensurate, or, more accurately, the legal estate must be equally extensive with, or more extensive than the equitable estate, for the equitable fee will not merge in a partial or particular legal interest."

Here the legal estate cast upon Ralph by descent was undoubtedly broad enough to cover his equitable interest ; and it is, I think, sufficiently clear that, upon the fair construction of the Van Mater deed, his equitable beneficial interest and the absolute legal estate which he took by the descent clear of the trust were precisely coextensive and commensurate ; each extended to one undivided third part of the premises, and each subject to the same conditions.

I am of opinion, therefore, that upon the descent cast upon Ralph V. M. Cooper at the death of his father in 1835, his equitable merged in his legal estate, and that he had at the time of the levy and sale by the sheriff, in 1838, such an estate in the one undivided third part of the premises as could be taken and sold under a common law execution.

The plaintiff, therefore, is entitled to recover.

C. J. GREEN and OGDEN, J., concurred.

CITED *in Cueman v. Broadnax,* 8 *Vr.* 511; *Bolles v. State Trust Co.,* 12 *C. E. Gr.* 310.